

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ACS RECOVERY SERVICES, INC.,    :    Case No.
          :
          Plaintiff,    :
          :
v.        :
          :
BOBBY HARRIS and GINGER    :
HARRIS,    :
          :
          Defendants.    :
          :

---

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

DAY PITNEY LLP
7 Times Square
New York, New York  10036-7311
Tel.:  (212) 297-5800
Fax.:  (212) 916-1015

Attorneys for Plaintiff
ACS Recovery Services, Inc.

On the Brief:
Glenn E. Butash, Esq.

1454246A06041207

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................ ii

PRELIMINARY STATEMENT ................................................ 1

STATEMENT OF FACTS ................................................... 3

    A.    The Parties ................................................. 3

    B.    The Plan's Payments on Behalf of Mr. Harris ................. 4

    C.    The Terms of The Plan ....................................... 5

    D.    ACS's Complaint in this Action .............................. 6

ARGUMENT ............................................................. 8

ACS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT THE HARRISES FROM DISSIPATING THE SETTLEMENT PROCEEDS ................................. 8

    A.    ACS WILL SUFFER IRREPARABLE HARM ABSENT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ................ 8

    B.    ACS WILL LIKELY SUCCEED ON THE MERITS AND THE BALANCE OF HARDSHIPS TIPS IN ACS'S FAVOR ............................. 10

CONCLUSION .......................................................... 13

## TABLE OF AUTHORITIES

Page(s)

### Cases

Brenntag Int'l Chem., Inc. v. Bank of India,
  175 F.3d 245 (2d Cir. 1999).................................9

Dilliard's Inc. v. Liberty Life Assurance Co. of Boston,
  456 F.3d 894 (8th Cir. 2006).................................12

Genesse Brewing Co v. Stroh Brewing Co.,
  124 F.3d 137 (2d Cir. 1997)..................................8

Moore v. CapitalCare, Inc.,
  461 F.3d 1 (D.C.Cir. 2006)...................................12

Philippines v. Marcos,
  806 F.2d 344 (2d Cir. 1986)..................................9

Reuters Ltd v. UPPI, Inc.,
  903 F.2d 904 (2d Cir. 1990)..................................8

Sereboff v. Mid-Atlantic Medical Services, Inc.,
  126 S. Ct. 1869 (U.S. May 15, 2006)............9, 10, 11, 12

Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.,
  190 F. Supp.2d 577 (S.D.N.Y. 2002)...........................8

### Statutes

The Employee Retirement Income Security Act of 1974,
as amended ("ERISA"), 29 U.S.C. § 1001 et seq................3

ERISA § 502, 29 U.S.C. § 1132...................................10

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).........8, 9, 10, 11

### Rules

Fed. R. Civ. P. 65.............................................8

**PRELIMINARY STATEMENT**

This is an ERISA action in which ACS Recovery Services, Inc. ("ACS"), on behalf of CIGNA, the insurer of an employee welfare benefit plan, seeks equitable enforcement of a lien against defendants, who are plan beneficiaries. By this motion, ACS seeks to restrain defendants temporarily from dissipating monies subject to the lien.

The plan disbursed $55,463.84 to cover medical expenses for injuries sustained by defendant Bobby Harris. As a condition of payment for these medical services, defendants agreed that the Plan would hold a lien against any recovery they received from third parties responsible for those injuries. Defendant, alone or with his wife, defendant Ginger Harris, received a $675,000 settlement for Mr. Harris' injuries from a third party insurance carrier. After receiving this settlement, the Harrises refused to satisfy the Plan's lien.

As discussed more fully below, the United States Supreme Court has recognized the right of subrogation, such as ACS's, to pursue a claim for equitable relief under ERISA for enforcement of a plan's liens. However, the Court has also ruled that subrogees may _not_ sue plan participants at law for damages. Thus, once defendants dissipate the settlement proceeds, ACS will have no cause of action under ERISA. For

this reason, ACS seeks an order requiring defendants to preserve $55,463.84 from the settlement proceeds pending the resolution of this action.

2

**STATEMENT OF FACTS**

A.  **The Parties**

Ginger Harris is a participant in the Fortis Select Benefits Program (the "Plan"), an employee welfare benefit plan maintained by her employer, Fortis Inc. ("Fortis"), and insured by Connecticut General Life Insurance Company ("CIGNA"). Ms. Harris' husband, Bobby Harris, is a beneficiary of the Plan. The Plan is subject to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. See Affidavit of Henry S. Romano, Jr. ("Romano Affidavit."), ¶¶ 4, 7.

ACS Recovery Services, Inc. ("ACS") is an independent vendor of medical claims recovery services to private healthcare payors and third-party administrators. ACS' business involves subrogation recovery; ACS identifies, investigates, and recovers accident-related medical benefits paid by its client-plans, where other persons or entities have primary responsibility for payment due to contract or laws, by way of equitable enforcement of its clients' liens. Id. at ¶¶ 2-3.

CIGNA contracted with ACS to review claims made by Plan members, but which may have been caused by other persons or entities. Id. at ¶ 4. Pursuant to its contractual arrangement with CIGNA, ACS is the assignee of CIGNA's right

3

to collection and subrogation, and asserts the rights, claims, and interests of CIGNA in this action. *Id.* at ¶ 6.

### B. The Plan's Payments on Behalf of Mr. Harris

Upon information and belief, on December 19, 2000, a truck owned by a concrete company struck Mr. Harris. Pursuant to the terms of the Plan, the Plan disbursed $55,463.84 to pay for Mr. Harris' medical expenses. *Id.* at ¶¶ 9-10.

Mr. Harris subsequently filed a claim with the insurance carrier covering the truck. *Id.* at ¶ 11. ACS notified the insurance carrier, Ginger and Bobby Harris, and Mr. Harris' attorney in the tort action, that the Plan held a lien against the Harris' recovery, up to the amount the Plan disbursed for Mr. Harris' medical expenses. *Id.* at ¶¶ 12-13.

Upon information and belief, Mr. Harris settled his tort claim with the defendant's insurance carrier for $675,000. *Id.* at ¶ 14. When ACS learned of the settlement, it reminded the Harrises and Mr. Harris' attorney of the Plan's lien. *Id.* at ¶ 15. Nonetheless, the Harrises have ignored ACS' demands and refuse to satisfy the lien. Upon information and belief, the Harrises are in possession of some or all of the settlement proceeds. *Id.* at ¶ 14.

C.  **The Terms Of The Plan**

The Plan requires reimbursement by the participant and/or covered dependent for payment of medical services when the participant or covered dependent recovers monies from a third party for injuries covered by the Plan. The relevant portion of the Plan, entitled "Right of Recovery and Subrogation," provides:

> If you or a covered dependent is injured by another party, the Plan has the right to be reimbursed for benefits it paid if damages are recovered from the responsible party. For this purpose, "responsible party" includes anyone who has an obligation to compensate you for the injury, including your own auto insurance company under its uninsured or underinsured provisions.
>
> **The Rules Of Recovery and Subrogation**
>
> By filing a claim for benefits under the Plan or by receiving benefits from the Plan, you automatically assign, transfer, and subrogate to the Plan all rights, claims, and interests that you have against a responsible third party. In addition, you agree to repay the Plan if you recover from the responsible party any losses paid by the Plan.
>
> You are required to cooperate with the Plan in pursing its right of recovery. This means that you are required to keep the Plan informed about the progress of your claims against the responsible party. If you do not pursue a claim, You may be required to assist the Plan in pursuing a claim. You must obtain written consent from the Plan Administrator before you settle any claims against any responsible party.

5

> The Plan's right of recovery applies to the proceeds of any amount you receive from the responsible party regardless of whether the amount is called reimbursement of medical expenses, or whether you believe the amount fully compensate you for your injury. The Plan's right of recovery applies to the net amount you receive (net of attorneys fee and other expenses.) The Plan does not share your cost of recovery.
>
> If you refuse to cooperate with the Plan in enforcing its right of recovery, settle a claim without the Plan's consent, or if you refuse to repay the Plan after recovering from the responsible party, the Plan will reduce payments on any future claim by the amount you owe the Plan. The Plan may also bring legal action against you to recover the amount you owe.

*Id.* at ¶ 8, Exhibit A, Fortis Select Benefits Program Summary Plan Description at p. 24 (emphasis added).

Under the express terms of the Plan and by accepting the Plan's payment of medical expenses, the Harrises agreed and acknowledged that any settlement proceeds they received would be subject to the Plan's equitable lien, the enforcement of which this action seeks.

D. **ACS's Complaint**

ACS filed a cause of action under § 502(a)(3) of ERISA, 29 U.S.C. § 1132 (a) (3), to enforce the terms of the Plan and for equitable enforcement of the lien against defendants.

6

ACS now moves for a temporary restraining order and preliminary injunction to require the Harris' to retain $55,463.84 from their settlement proceeds to satisfy the Plan's lien, pending the litigation of this matter.

## ARGUMENT

### ACS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT THE HARRIS' FROM DISSIPATING THE SETTLEMENT PROCEEDS.

The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction pursuant to *Fed. R. Civ. P. 65*. *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 190 F. Supp.2d 577, 580 (S.D.N.Y. 2002). A temporary restraining order and preliminary injunction should be granted when the plaintiff demonstrates:

(a) irreparable harm absent a temporary restraining order, and

(b) that either it will likely succeed on the merits or the existence of "sufficiently serious questions going to the merits to make them a fair ground for litigation, and that a balancing of hardships tips 'decidedly' in [its] favor." *See Genesse Brewing Co v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997); *also Reuters Ltd v. UPPI, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).

### A.  ACS Will Suffer Irreparable Harm Absent A Temporary Restraining Order And Preliminary Injunction.

Under §502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), a plan fiduciary may bring a cause of action for equitable

8

relief to enforce the terms of an employee welfare benefit plan. ERISA §502(a)(3); 29 U.S.C. § 1132(a)(3). Under the Supreme Court's recent interpretation of that section, an equitable lien attaches to specific funds to which the plan claims it is entitled that are in the plan beneficiary's possession. *Sereboff v. Mid-Atlantic Medical Services, Inc.*, 126 S. Ct. 1869, 1874 (U.S. May 15, 2006). Only equitable relief with respect to such specific assets is available to the plan fiduciary and ERISA will not permit enforcement of a legal right. *Sereboff* thus dictates that ACS may enforce its lien <u>only</u> against the Harris' settlement proceeds.

ACS will suffer irreparable harm absent a temporary restraining order and injunction because, if the Harris' dissipate these proceeds, ACS loses its right to equitable enforcement of the lien and effectively losses and any right to recovery of the Plan's funds under ERISA. *See generally Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (irreparable harm may be found where there is a "substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied"); *Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986)(preliminary injunctions and temporary restraining orders are proper to prevent a defendant from making a judgment uncollectible). For this reason, ACS

9

respectfully requests that this Court enter an Order restraining defendants from dissipating the settlement proceeds.

### B. ACS Will Likely Succeed On The Merits And The Balance Of Hardships Tips In ACS's Favor.

The Plan is entitled to an equitable lien against the Harris' settlement proceeds under §502 of ERISA. In *Sereboff, supra*, the Supreme Court granted the right of a fiduciary of an employee medical plan to pursue a federal equitable claim under ERISA §502(a)(3) for imposition of a constructive trust and equitable lien, where specific funds to which the plan claimed it was entitled were in the plan beneficiary's possession.

The facts in Sereboff are identical to this case. Marlene Sereboff and her husband were beneficiaries to an employer sponsored health insurance plan administered by Mid Atlantic Medical Services, Inc. ("Mid Atlantic"). The health plan required payment of certain medical expenses, and also required beneficiaries to reimburse Mid Atlantic for benefits from "recoveries from a third party (whether by lawsuit, settlement, or otherwise.)" *Id.* at 1872.

The Sereboffs suffered injuries resulting from a car accident, and the health plan paid the Sereboffs' medical bills. *Id.* at 1872. In connection with this accident, the

10

Sereboffs commenced a state court action in tort against third parties responsible for the accident. *Id.* Mid Atlantic, by letter to the Sereboffs' counsel, asserted a lien over the Sereboffs' anticipated recovery from the state court action. *Id.* Mid Atlantic had disbursed $74,869.37 for the Sereboffs' medical bills. *Id.* at 1873.

After Mid Atlantic asserted its lien, the Sereboffs settled the state court action for $750,000. *Id.* at 1873. Upon receipt of the settlement proceeds, however, the Sereboffs failed to satisfy Mid Atlantic's lien. *Id.* Mid Atlantic subsequently filed an action under §502(a)(3) against the Sereboffs to collect the amount the health plan disbursed for their medical expenses. *Id.* Mid Atlantic alleged a claim for breach of contract and also sought recovery through an equitable lien on the settlement proceeds or constructive trust. *Id.* at 1874.[1]

The Supreme Court ruled in favor of Mid Atlantic on its equitable §502(a)(3) claim and affirmed the lower court's decision requiring the Sereboffs to reimburse Mid Atlantic

---

[1] Mid Atlantic also moved for a temporary restraining order and preliminary injunction requiring the Sereboffs to preserve from their settlement proceeds the amount paid by Mid Atlantic for their medical bills. *Id.* at 1873. The Sereboffs stipulated to retain the requested amount in an investment account. *Id.*

from their settlement proceeds for the amount spent on medical services. *Id.* at 1878.

Under the holding in *Sereboff*, ACS is clearly entitled to an equitable lien up to $55,463.84 from the Harris' settlement proceeds. First, the terms of the Plan expressly provide that "the Plan has the right to be reimbursed for benefits it paid if damages are recovered from the responsible party."

It is undisputed that the Plan paid benefits on Mr. Harris' behalf for medical treatment necessitated by his accident. *See* Romano Affidavit, ¶ 10. It is also undisputed that Mr. Harris recovered a settlement from the party responsible for his damages. *Id.* at ¶ 14. The clear language of the Plan thus subjects the settlement proceeds to the Plan's equitable lien.

Under *Sereboff*, ACS is entitled to an equitable lien on Mr. Harris' settlement proceeds and therefore will likely succeed on the merits of its claim. *See also Dilliard's Inc. v. Liberty Life Assurance Co. of Boston*, 456 F.3d 894, 900-01 (8th Cir. 2006)(affirming decision granting insurer equitable relief of reimbursement for overpayments resulting from insured's recovery of third party [social security] benefits); *see also generally Moore v. CapitalCare, Inc.*, 461 F.3d 1, 8 (D.C.Cir. 2006).

12

## CONCLUSION

For the foregoing reasons, ACS respectfully requests that this Court grant its application for a temporary restraining order and injunction requiring the Harris' to preserve $55,463.84 from their settlement proceeds.

Respectfully submitted,

DAY PITNEY LLP

By: _____/s/ Glenn E. Butash_____
      Glenn E. Butash

DAY PITNEY LLP
7 Times Square
New York, New York  10036-7311
Tel.:  (212) 297-5800
Fax.:  (212) 916-1015

Attorneys for Plaintiff
ACS Recovery Services, Inc.

Dated:  April 12, 2007

---

4/13/07

I, Glenn E. Butash, declare under the penalties of perjury, that I am filing this ex parte application without notice to defendants because I believe that, if notice were provided without the relief in place, the funds that are the subject of plaintiff's lien might be dissipated or disbursed.

Glenn E. Butash

13